Our next case is 20-3038 United States v. Carter and the related cases. We've expanded the oral argument in this case, and contrary to what the courtroom deputy might have discussed earlier, I think the way the panel wants to proceed is as follows. First the U.S. Attorney's Office can go first for approximately 15 minutes, and then we'd like to hear from the public defender responding to the government's case. And then we'll do the objector's case, and after that the objector will get 15 minutes or so, and the public defender will have 15 minutes for rebuttal. I'm not going to be, you know, we only have this case left on the flight this morning, so we have some flexibility on time, and I want to make sure everybody gets their arguments in and our questions asked and answered. So with that, I think, Mr. Wolford, are you up first? Mr. Glazer. Mr. Glazer, okay, sorry about that. You may proceed when you're ready. All right, may it please the court, William Glaser for the United States. I will attempt to reserve three minutes of my time for rebuttal. The district court's highly unusual investigation in this case was not authorized by Rule 41G, lacked a factual basis, and violated the separation of powers. Both the investigation and the subsequent 2255 litigation has only confirmed that none of the federal public defender's clients suffered a Sixth Amendment violation. And the district court, in its August 2019 order, committed various factual and legal errors that continue to have an adverse effect in the Section 2255 proceedings. Therefore, the government has to counsel. Right there is where I need to stop you, because I've got to find out exactly what it is. According to your brief on page 36, it says, the government is appealing only the court's adverse determination that it has begun applying in the 2255 litigation. Now, it seems to me that you're asking only for prospective relief. In other words, that the order, the 188-page order that the district court entered, once the relief that was granted, there's nothing left in the Carter case. And that you're only asking us to quash or to enjoin the use of that order in future 2255 cases. Now, isn't that correct? Yes, Your Honor, that's essentially correct. And the reason that we think that this court has jurisdiction. Isn't that correct? Isn't that what's going on here? That's correct. There's no further relief in the Black-slash-Carter case that we could receive. Well, isn't it moot, then? I mean, if there's nothing left in that case, what's the basis of your being here? Well, Your Honor, it lies in the Article III controversy is based on the effect in the ongoing 2255 litigation. And for the proposition that this court does actually have jurisdiction, we cited the Supreme The ongoing 2255 cases even have a separate number. They're not involved in Black-or-Carter. That's correct, Your Honor. OK, go ahead. And what really is your remedy if we would agree with you and vacate the 188-page order? I'm just going to call it the order. Really, what good does that do you and the other 2255s? So, Your Honor, it does a few things for us. First of all, the district court in this case determined not only certain factual issues that it could later determine in the Section 2255 case that we could then challenge there, but it also specifically said that it was going to hold the government's conduct in this case against the government in the Section 2255 proceedings. So, for example, what do you interpret that to mean? Right. So, Your Honor, if you look at pages five, pardon me, six and seven of the district court's order, on page six, the court said that the record in this case would lay the groundwork for specific spoliation claims in individual cases under 2255. Spilling onto page seven, it said that the United States Attorney's Office's delay and obfuscation in the investigation will weigh into fashioning an appropriate remedy in the Section 2255 cases. I know it's not in the record. Has any of that happened yet in the dozens of pending 2255s? So, Your Honor, some of it has and some of it hasn't. So, in the 2255 cases, the district court has said that it was going to reach adverse inferences against the government with respect to the majority of the petitioners and conclude that despite the absence of any evidence in the record, that the United States Attorney's Office, the assigned prosecutors, actually listened to audio recordings or viewed attorney-client meetings before the defendants in those cases pleaded guilty or were sentenced. Now, yesterday, the court issued an order where it sort of carved out 11 of those defendants, those petitioners, excuse me, whose video recordings were received after they were sentenced, so, in other words, there was no possible way that the U.S. Attorney's Office could have viewed them to their prejudice. Well, let me ask you this in regards to the mandamus that was entered in the original black and looking at what the court, this court, said that she could only use that in the black case and in those cases which were before the court in black and cartered. Now, the use of that in any other instance would violate the mandamus, wouldn't it? Your Honor, that's, I think that's possible, although I don't believe that we've made that argument in the Section 2255 proceedings. And whether you've made that argument or not, the question is there's a mandamus that exists in the black carter case and there's nothing left of black and cartered. So if that one, if that 188-page order is used anywhere else, contrary to that mandamus, that's in violation of what this court has already ordered that that can be used for only in black and cartered and the 41, whatever it is, cases that were a part of black and cartered. Isn't that right? Well, Your Honor, I'm not exactly sure because the mandamus order specifically operated on this case and it didn't say anything about how the findings in this case could be used in subsequent cases. And so I think that goes back to my point. Don't you have to wait then in a 2255 case that's brought before it where she's attempting or does use that, that's the appeal in that case, not in this case. So Your Honor, I think if the district court grants Section 2255 relief, we are very likely to be appealing in one of those cases. But I would point out that unlike them under the mandamus standard, where we have to show that we have no other adequate means of relief, we don't actually have to satisfy that standard here under the Supreme Court case law in electrical fittings court, in deposit, the deposit guarantee case that we cite in the reply brief and in this court's decision in Jarvis. All of those cases involve situations where there could be an appeal from the subsequent litigation. So for example, in this court's decision in Jarvis, there wasn't even any ongoing state court litigation, but the risk of the conclusions in the federal case being used in future state court proceedings was sufficient to indicate that there was an article three case or controversy. Similarly in the Supreme Court's decision in electrical fittings court, that although there could be a subsequent appeal from a finding of a violation of a patent, the Supreme Court said that simply finding that the patent was valid in one case was sufficient to invest the prevailing party with the ability to appeal. Well, then tell me exactly what is your case in controversy in this case that we have before us, Black and Carter? Right. Your Honor, the remaining case in controversy, because the district court did not actually impose any monetary sanctions, concluding that it could not, and because the government didn't oppose some of the other relief granted, the dismissal of the indictment, the only remaining controversy is based on the district court's repeated statement that it was going to use findings of fact in this case against the government in the section 2255 proceedings. And in fact, she hasn't done that yet, right? Well, Your Honor, she has repeatedly in the section 2255 proceedings, some of these orders are included in the record and either in our appendix, excuse me, our second supplemental appendix or the FPD's supplemental appendix. She has indicated that she was not going to re-examine the conclusions in this case. And in fact, the orders yesterday specifically said that they reaffirmed the analysis in the Black case. So that's something that's going to happen for future cases. Yes, Your Honor. Has the government in those 2255s objected to the use of the Black order? Your Honor, yes, we've made an argument at various points within those proceedings that basically all the factual findings in Black were erroneous. And most recently in those proceedings, the government has refused to comply with further discovery demands. The district court was going to require the government to engage in discovery that a contractor estimated would cost $3.5 million. And this is after the government has already extended substantial time and resources to turn over extensive discovery, including 20,000 pages of emails. So in those proceedings, the government continues to experience harm because of the district court's view that it can continue this expansive investigation of the U.S. Attorney's Office. Well, is the appellate book here the granting of 41G relief or is it the finding of civil contempt? What's the vehicle here that gets us to an opinion? Your Honor, it's the finding of civil contempt, I think, and the accompanying adverse factual and legal findings because, as we pointed out, as early as February of 2018, the government made very clear to the court that we did not object to the granting of the Rule 41G motion. In other words, the property that had been handed over to the court could be returned to the clients in this case. So because we agreed to that relief and because we moved for the dismissal of the indictment against Carter, the only remaining defendant, there is no other hook. It is simply the adverse conclusions that the court has stated will apply in subsequent proceedings. And does the fact that she did not impose any monetary sanctions or otherwise, does that defeat appellate jurisdiction on the contempt appeal? No, Your Honor, it doesn't. It certainly makes it more complicated, but that's why we rely on the Supreme Court decisions and this court's decisions related to prevailing parties being able to appeal. And I think if you read those cases, you see that in each of those cases, the same problem is presented. In other words, the prevailing party doesn't have a sanction against it outstanding, but as the court said in Jarvis, this court said, avoiding a state court suit in that case gave a requisite state for an Article III case or controversy. You're kind of a funny prevailing party, aren't you, in this case? You get the black order and an attempt at sanctions and then a retrenchment from sanctions. And so you still have the opinion out there, but I guess the government doesn't have to pay any money. And, you know, there you go, you're a prevailing party. There you go. Right, Your Honor. And I would just say that the problem we're presented with here is not really the government's fault. We've objected throughout to the district court's authority to conduct this proceeding. And to the extent we can be faulted jurisdictionally, it was for agreeing to more relief than we really needed to. So the key here that the government has maintained throughout is that Rule 41G does not authorize this sort of invasive investigation into the U.S. Attorney's Office's internal workings. The district court specifically said that she was looking to make cultural change in the U.S. Attorney's Office that is inappropriate under Rule 41G, it's inappropriate under the separation of powers. And at no point in the proceedings has there been any indication that any of the federal public defender's clients had their Sixth Amendment rights violated, although they were Mr. Glazer, two questions. One is, I want to hearken back to Judge Baldock's discussion with you in terms of the potential that these findings could be applied in the 2255s, and if my memory is correct, your answer to the first question was that some have been applied in the 2255s and some haven't. Assuming my memory is correct, doesn't that crystallize the reason that this dispute with regard to the potential applicability in the 2255s is at a minimum prudentially unright if we are in the position of having to project for all of the other 99 plus 2255s down the horizon? And at the risk of making my question too complicated, doesn't the order that was issued yesterday morning crystallize the reason that this is absolutely unright? Because to take, for example, the Schillinger argument, which she decided in 188-page order, she acknowledges that you have disputed her interpretation of Schillinger. And so she has a protracted discussion acknowledging that what she said in the 188-page order is not binding, and she reanalyzes it and, to some degree, changes her analysis. So why isn't all of the issues with regard to the potential applicability in 2255 unright? So, Your Honor, I guess two responses to that. First, I would not read yesterday's order as really modifying the analysis in the Black Order at all. In fact, she said that she was reaffirming that analysis, but just specifically addressing some of the arguments that the parties had made subsequently. But I think beyond that, in the Guarantee National Bank case that we cite in our reply brief, which was itself describing the electrical fittings case that we rely on, the court said that an impairment in some unspecified future litigation can supply the personal stake for an appeal under Article III. Here we don't have unspecified future litigation, and we don't have to prove a specific way that the findings are applied against us in those cases. In the patent case, for example, Electrical Fittings Court case, it was possible that no one would ever bring another patent infringement suit, but the mere fact that the patent was held to be valid was sufficient to invest the appealing party, the prevailing party, with the right to appeal. Isn't the difference with Electrical Fittings is that the court had specifically found, with regard to the validity of the patent, and with regard to the Sixth Amendment violations, as Ms. Brannon elucidated on pages 15 to 17 of her response brief, in a variety of ways, Judge Robinson never ultimately made a finding on whether there was a Sixth Amendment violation. To take one of many examples, on page 1147, whether the USAO became privy to protected communications because of its purposeful intrusion in a particular detainee's case will be decided in each Section 2255 action. She never, in my reading of that long order, never ultimately reached a resolution of whether  Before you answer, Mr. Luzardo, go ahead and turn off the clock. Thank you, Your Honor. Although the federal public offender points out, and absolutely correctly, that the District Court did not find a Sixth Amendment violation in this case, the District Court did engage in a variety of factual findings. She said they were going to apply, both as to the violation and to the remedy in the Section 2255 proceedings. So although she didn't go all the way there, she went most of the way there. And those findings, some of them are findings that we simply cannot challenge in the Section 2255 proceedings. For example, her conclusions that the government committed misconduct in the investigation in this case, in its conduct in this case. And so this is our only opportunity to appeal specifically those findings that she has indicated, as I mentioned earlier, will apply in the 2255 proceedings. Yeah, on the separation of powers argument, even if we agree with you that the special master investigation exceeded the scope of the mandamus remand, at this point, the gene is out of the bottle. And I'm not sure what we can do about that. I mean, I'm still not sure there's any effective remedy at this point. Your Honor, there's not the remedy that we might have hoped for, which obviously was to avoid that investigation. But I think the remedy that remains is for this court to vacate the order, indicating that this thing was inappropriate from the beginning. And the reason that that helps us is that that allows us to go into the Section 2255 proceedings with a clean slate, without these findings hanging over our heads that we committed misconduct, not only with respect to the calls and the videos, but specifically with respect to the proceedings of the investigation itself. So at this point, we're sort of starting at a disadvantage because we don't have a clean slate in those proceedings. Well, in the 2255s, the defender comes in and argues that there was a Sixth Amendment violation that tainted the jury or the plea. And Ms. Bransman had to prove that outright somehow. And so whichever U.S. attorney was involved in that case, there's going to be some kind of showing that will need to be made that that attorney looked at privileged materials. That's unlawfully, right? Yes, Your Honor. Does the Black Order, does that establish that for these 22? I know I certainly understand the atmospherics there about misconduct. And, you know, a lot of the misconduct had to do with the compliance with the special master's activities and not necessarily who did what in particular cases. But to what extent does the Black Order prevent your office in these discrete cases going forward from, you know, defending against the accusation or allegation of a Sixth Amendment right to counsel violation? No, Your Honor, it doesn't directly prevent us from doing so. And in fact, in those proceedings, every assigned AUSA has executed an affidavit saying that they did not listen to or view recorded calls or videos. But what it has done is the district court has continued to, at the affidavit's request, has continued to authorize extensive and very onerous discovery in an attempt to find the smoking gun that the U.S. attorney's office has simply concluded is not there. And in turning over voluminous discovery, has not found the smoking gun that they're looking for. And so instead of... What is the smoking gun they're looking for? Your Honor, apparently they're looking for a smoking gun indicating that some of their clients had their recorded calls or video meetings with attorneys that assistant U.S. attorneys viewed or listened to some of those recordings. I understand. Ultimately, the defender is going to have to show somehow that a particular U.S. attorney looked at a particular transcript or listened in, correct? Well, Your Honor, that seems like it would be the case, except that the district court in the 2255 proceedings has now said that because of the government's objections to discovery, she was going to make an adverse inference against the government and conclude that, in fact, prosecutors had listened to or viewed the calls or videos. And that's based on the black order? Well, no, Your Honor, that was not based on the black order. But what we have... So specifically what we have from the black order is these findings where the district court has said, for example, that the pattern of recurring violations by the government will be relevant to the court's determination of an appropriate remedy. That's on page 1151 of the appendix, I believe, page 181 of the district court's order. And I could cite other instances in the black order where the court has said it was going to apply its conclusions against the government in the 2255 proceedings. All right. I think that was helpful. Thank you. Before we move to the public defender, any additional questions? I just have one question for clarification. With regard to the findings relating to contempt, since the judge has now said unequivocally that there will be no monetary sanctions and hasn't imposed any other penalty associated with the contempt, are the findings underlying the imposition of contempt pertinent only insofar as they may be applied in the 2255s? Yes, Your Honor, that is correct. So if we find that there is, and I know you think that we shouldn't, but if hypothetically we were to say that the issues, for example, with regard to whether there was ultimately a Sixth Amendment violation, if we decide that those are either unripe or there's not Article III jurisdiction or prudentially unripe, then we should, or we would have to also say that all of the findings that underlay the imposition of contempt were also non-justiciable, correct? We couldn't carve out some that are justiciable and some that aren't. Your Honor, I might not be fully understanding the question, but I think, so obviously we think the right relief would be to vacate the order, but I think... I don't want you to have to speculate at what I'm trying to ask. So let me try to take another crack at it. If some of the issues are non-justiciable, all of the issues must be non-justiciable. It wouldn't be possible to carve out some issues that are justiciable because they underlay an academic imposition of contempt and the other issues are non-justiciable. Either all are justiciable or all aren't, correct? I think that's correct, Your Honor, based on my reading of the Supreme Court and this court's case law, that yes, I think I believe that's correct. Oh, and let me jump in there because if I follow what Judge Bacharach is saying, that would be similar then to an advisory opinion, which would not have an effect anywhere else. I think that's... I may have overstated it for Judge Bacharach, but that's what I'm hearing, that if it was wrong in one place, but it wasn't justiciable, then any opinion that you put forward in regards to that would be an advisory opinion. Well, Your Honor, we don't think that would be an advisory opinion based on the authorities that we cite, although I understand the concern because when you have a prevailing party and the jurisdictional hook is simply future litigation, it does look more like an advisory opinion, but under the Supreme Court's law and this court's law, the courts have concluded it's not an advisory opinion where the prevailing party still retains that interest based on future litigation. Well, on the authority that you've cited, those are not quite the same facts that we've got in this case. I mean, this is a nightmare almost, but anyway. That's something I think we can agree on, Your Honor. All right. Before Ms. Brannon starts, Ms. Lindstrom, could you come on, please? I'm getting a flashing screen on my video feed. Is anybody else getting a flashing light or panel that's projecting at them? I haven't noticed it. You'd notice if it happens, so it probably is something that's wrong with my particular connection to the proceedings. All right. Well, I can minimize my screen because it's pretty distracting. All right. With that, Ms. Brannon, why don't you go ahead on behalf of the public defender? Thank you, Your Honor. I may have pleased the court and counsel. I've been involved in this litigation since August 3rd of 2016. At the end of this litigation, ultimately, the government was the prevailing party, as the court has pointed out, and as such, it bears the burden of showing Article III jurisdiction and Article III standing, as well as prudential rights. The court's orders yesterday, the district court's orders yesterday, brought it with much clarity the government's problem with the third prong of Article III jurisdiction, and that is redressability. And as the court pointed out in the questioning, vacater of the black order will not give the government the remedy it seeks. First of all, it will not give them a clean slate, because if the order is vacated and a black decision, that does not erase what the government did, doesn't erase what the government said. It doesn't take away any of the evidence of that misconduct, and that evidence will still be available for use in the 2255s. So, because the remedy— Isn't there an ongoing injury, you know, from the government's perspective here? Because they're boxed in on some of these black factual findings, and they're going to be used adversely against them. What do they do about that? I mean, they don't have a chance to, you know, litigate case by case, do they, certain elements of the findings of misconduct? Absolutely, I believe they will be allowed that, and I think the court proved that yesterday. Well, how do they unring the bell on, you know, the U.S. attorney's findings of misconduct by the office and kind of systemic abuses? The question is whether it's an actual injury, in fact, that will be used in the 2255s to their detriment. They're not appealing really a judgment here, they're appealing some non-presidential statements of the court. The remedy they're asking for, which is to vacate the ruling, again, does not change what their actual conduct was. And in 18 months of litigation, Your Honor, in the 2255s, since the black ruling came down, the government's not been able to point to one instance where the district court has given preclusive effect on any fact or legal matter in the 2255s. And in fact, the court has sort of left it open. If you read through the court's orders, she's invited additional briefing, she has left, for example, on the waiver, she granted an evidentiary hearing on that, but left it open for both sides to present evidence on that. Is your office using the black order as a sword in the 2255s? Oh, we have cited it as a sword. And an example would be when we asked for the adverse inferences. We asked the court not only to consider the government's conduct in the 2255, but also its misconduct in the black order, in the black litigation. And the court declined to do so. The adverse inference order that the government complains of is predicated only on the government's conduct and misconduct in the 2255s and failing to provide that. So although we may have attempted to do so, we have not done so successfully and the government can't point to any preclusive effect the court has given to any of the findings of this conduct. Let me ask you this then, because she's indicated that the court in its 188th page of order has indicated on the basis of what she's saying, contrary to what the special master said, because the special master said that he didn't find any evidence that the government had used any of this information or looked into it. Yet, in her findings, she's actually, in your benefit, saying she's going to say no that they did and give you the benefit then of not having to go forward with that fact. Well, two points on that. The statements that the special master made were very early in the investigation. And in fact, there was a lot. I'm sorry? It still was made. And that's contrary to what the district court is saying she's finding. It was made, but the evidence that was developed afterward, I believe, is available to the parties to talk about in the 2255. But one of the things about the adverse inferences that I think goes to Judge Bacharach's questions about prudential brightness is that she did not say that, the court did not say it is giving us adverse inferences on this particular point. It said if we reached a certain juncture, it would consider that. The things that we have to get past first are we have to meet the threshold findings that the court set forth in the Black Order, which were applied against the petitioner. We have to survive the jurisdictional and procedural bars that the government has presented. We have to show that there were actual attorney-client communications. There are so many ifs that are in place and conditions precedent before the court will even concede and consider the adverse inferences that this is not right for this court's review. What are the adverse inferences you're asking for and how are you asking them to be applied in a specific case? What it is distilled to at this point, because we ask for a lot of adverse inferences, but where we are right now, it is distilled to whether the particular U.S. attorneys in that particular case had become privy to the attorney-client communications. And she's granted you the benefit of that doubt. Only if we meet, but that won't actually be applied until we meet all of these other conditions and it becomes an issue before the court, and we are far away from that. If you look at Texas Brine, for example, there was a ruling by the court that this might happen, but the court had not yet applied it to the facts and therefore it was not right. Moreover, if the court does that... Why should we be even arguing that, counsel? Because in the Black and the Carter case, if the government didn't object and they gave everything back to the litigants in that, and that case is over, then why doesn't most, as Judge Bacharach is pointing out, what she said in that order become more of a... just a voluntary opinion as to what's going on in this case. I mean, that... So you wouldn't have that inference against the government when it comes to a 2255. The defendant has to stand on his own merit. That's right. And the government also would have the opportunity to appeal that adverse inference in the 2255. So if we're looking at prudential rightness, it does not fit for judicial review because it has not happened yet and it's contingent on other facts, but it is also... will not work an undue hardship on the government because it will still be able to appeal the 2255. And I believe the government said in its argument... Well, how does the government... get an appellate review of the findings in this case? You know, they're going to be... I guess they're subject to collateral estoppel, you know, across the hall in the 2255s, but even if you're right that the adverse inference can be appealed, how in the world could the government appeal the underlying fact findings, which are supposedly here on clear air, I guess at this point, but I'm not sure there would be appellate review of the underlying fact finding in, you know, a subsequent 2255 appeal. And I mean, doesn't that leave the oddest situation in the world where there's a district court ruling that can't be reviewed by an appellate court? That is an odd consideration, but I would point out that it's very conjectural and speculative. That's why it's not an actual injurious fact, because we're talking about what if the district court gave a fact in these circumstances when the district court has not given any preclusive effect to any of the fact findings. I know, but let's assume that the court does, you know, apply black like she said she will. Is there any way for the government to get appellate review of the underlying basis for the adverse inference? I think an adversary, you know, an adversary proceeding or appellate proceeding where they can get it reviewed. Absolutely, because if the court applied a factual finding in the 2255s, I think the government could still challenge that for clear error. Was there sufficient support in the record to support that factual finding? And so it still has the opportunity. There wouldn't be any record in 2255 as to the underlying factual basis for the adverse inference other than the black order. Well, I would say that there will be, because I absolutely intend to introduce all of that evidence in each and every 2255, so there will be a factual record, but that just shows how hypothetical the government's situation is that it doesn't have an actual injury in fact, and moreover that the vacator of this particular order does not redress or ameliorate the injury that they're complaining of, because that evidence will still be available, and the argument will still be available for us to take to the 2255. They are, they've conceded that they are not asking for the court to provide relief from the actual investigation that took place in the phase three investigation. Wouldn't one of the ways, counsel, I know that in the other case that's not before us that the 28J refers to, wouldn't one of the ways to make sure that that would not happen would be to hold the district court to the statute as to who hears 2255 cases, the judge in which they were originally appointed to hear it? Wouldn't that ensure that you couldn't use the black order? As far as, I guess the court is asking about the reassignment error that the government has claimed. We don't have that before. That's in his 28J letter. We don't have that before. But the question is, how does the court on appeal ensure that the black order hasn't been used? And one of the ways to do that would be to say under the statute that she cannot bring all those cases into her, but they have to be assigned to the judge that heard the matters, the guilty pleas or the convictions to begin with. I don't think that that would preclude the other judges from looking to the records in black and making similar findings. One of the things I would like to point out that of the 99 pending 2255s that the FPD represents, 79 of those were either Judge Robinson's originally or a judge that was not on the court, is no longer on the court. So the fact that Judge Robinson has those before her, I don't think will make any difference in how and whether the black ruling is used. The other thing I would like to point out. Can I ask you a question? Do you stipulate or would you agree that all of the findings in the black order, the lengthy order are not binding that Mr. Glazer is welcome to argue in all of those related 2255s? Judge Robinson, we disagree. We want you to start from scratch on this issue and you would not argue, no, you're circumscribed either by virtue of that you have to have some argument that of why what Judge Robinson said was wrong or we should start from the premise assumption that what she said in the black order is correct. You agree with that? I agree with that. And one of the things that Judge Robinson says that we will be discussing in the 2255, how to add the evidence from the black investigation to the 2255 record. The FPD has never argued that the black ruling is in any way binding or conclusive. And the footnote in Camreda actually acknowledges that fact that a district court order is not binding on a circuit, on other districts, on other district judges, or even on that same court. And in fact, one of the things that we pointed out in our 28J letter yesterday is that this court, this district court acknowledged that earlier interlocutory rulings were not binding and reconsidered some issues before the court. And so for example, what has happened on the Schillinger issue that came up in the 730 order yesterday, was the court said the party's arguments have evolved and the government has made this objection about using the black ruling. And for that reason, I'm going to reaffirm and expand my analysis of the Sixth Amendment and the Schillinger ruling. And what happened when the court did that was it mooted the government's appellate claim against the Schillinger section of the black ruling because it said it's not going to apply it. Here is our ruling, the ruling afresh. And the basis for it, it invited additional briefing from the parties before it made that ruling. The very fact that the two rulings yesterday can have such a direct impact on the appellate landscape before this court today is evidence that this is too early and not in the right case. It is potentially a right constitutionally unright. The Schillinger case counsel, I was confused by that 28J because where the trial court said that she was going to revisit, I guess, what she said about Schillinger. Well, was she going to revisit it in regards to Morrison or what's the basis of that? Because we in the Tenth Circuit know what Schillinger said, but you still have got the question of what the United States Supreme Court said and how that may affect this case. Before you answer, Ms. Lindstrom, would you turn off the clock? Thank you. You may proceed. What the court acknowledged yesterday was that the party's arguments about the contours of the Sixth Amendment precedent had evolved and basically what, they've been refined and sharpened. And so the court took that and took the new briefing in the 2255 and said, this is this court's analysis of extant controlling circuit and Supreme Court precedent. And one of the things that it clarified is that the court has not yet made a decision about which party will bear the burden of persuasion regarding prejudice. And that is one of the government's primary complaints about the Schillinger discussion in the black ruling has to do with prejudice. For this court to delve into Schillinger at this point under these circumstances would truly be an advisory opinion because Schillinger or Morrison have not been applied to the facts of the case in the 2255. I would say that they were applied in the government's favor in the black ruling, which points out that again, the government is not appealing a judgment. It's just appealing certain statements within a ruling. Would you advise then counsel or recommend to this panel that in view of the changing picture of this almost day by day or our court district court hearing that this matter be completely abated until this court had an opportunity to render an opinion? No, we believe it should be dismissed outright because for the very reasons the court has alluded. That's your position, but my position and what I'm saying is that because the district court just entered another order. Was it yesterday? I guess it was yesterday that the facts keep moving and it would absolutely have an effect on what we do and try to figure out what the ruling and the holding of this court should be. What would be wrong with abating everything until the district court see where we are and all the parties see where we are in regards to this matter. Because by the time we reach that point, the court will have applied the law to the facts in a 2255 and granted relief. And at that point, it is right for appeal in the 2255. What your honor just described was a classic case of credential unrightness. There are more facts coming in that bear on the issue and it can be appealed and it sounds like it will be appealed in the 2255. For example, the court noted yesterday that some of the petitioners would be dismissed because we had not satisfied certain threshold findings. And granted as a COA in those cases, that's how that came out. So the thing that the court's talking about holding an abeyance may never ever come to fruition because there are so many things that have to be decided before it. Again, that shows that what we're talking about would be actually an advisory opinion or something that's credentially unright or constitutionally unright because it's not an imminent injury in fact. Again, because that there have been no instances of Judge Robinson applying the black ruling with any preclusive effect on any fact or any legal determination shows that this is not that the government has failed its article three standing. If they fail the article three standing, the remedy is dismissal of the appeal. It's not merely holding an abeyance to see how this might work out because it may never happen. Yeah, this is a fascinating case in many sense. You get a favorable opinion more or less below and you intervene these cases several years ago. You're gonna get an ad possibly get an adverse inference and their position on appeal is that there's no way anything that happened in this case can be reviewed by the 10th circuit at this point. And that's where I've rhetorically questioned them because of the posture of the legal arguments. But my other question was if the panel were to conclude that the district court exceeded the scope of the mandamus order that we issued, what remedy is there for that other than vacating the black order? My first response to that, your honor, would be that issue is really not before this court and we would certainly ask for the opportunity to brief that. What happened in the mandamus was the court did reach the merits but limited the scope of what the court could do. It did not limit the investigation that could take place or how that investigation would be used in other cases. So there has been no argument that the district court exceeded the scope of the mandamus below either in the court or on appeal. The legal issue in the 41G was did the government have property that it obtained either unlawfully or shouldn't have and then the remedy for that, there'd be a finding that they have the property. I don't think they disputed that. And then the court would order them to return it. What's the purpose of investigating in the culture of the U.S. attorney's office or whether specific attorneys had looked at privileged materials in cases that were not part of the black litigation? There were two reasons for that. First of all, the government's response on the 41G did not deprive the court of authority to continue to look into the legality of that seizure. And I would point out that although they stated they agreed to return the recording and they stated on the record on August 1st of 2018 that it had returned all of the recordings. In fact, it had not. It has taken over two years since August of 2018 for the government to go through and identify and return audio recordings of attorney clients. It is an ongoing process. The last production was actually October 30th of 2020. And we don't believe that they have completed that. And because just their simplest non-binding sort of general agreement to return those when they would not agree to what the scope of the return was meant that the court should stay involved for the purpose of the rule 41. But more importantly, your honor. What do you think counsel? As I understand in Black and Carter, you can correct me if I'm wrong. Everything that Black and Carter and in accordance with the mandamus of those that were in the 41 or in Black and Carter case that the government turned over all, all that they had in regards to that. Is that not a correct statement? Because that's what I understand. The government has alleged that as far as Black and Carter and those who have filed a motion in that everything was given back. Everything was given back that they seized in the course of the Black investigation. That's my question. And so you're wanting to refer this now to the other 2255 cases that are ongoing. No, because what we discovered as part of the Black litigation well before the phase three was that the government had seized many attorney client calls. Well, counsel, did you object then when the trial court just gave, you know, Black and Carter were gone and the government claims that they have turned over everything. Did you object at that time saying, oh no, the government hasn't turned over everything that we're asking for? Yes. Well, in the sense that we filed a new motion. Did you object or no, you didn't object. We filed a new motion saying that they had not done this. And the government agreed that they were going to do this. And so we did bring it to the court's attention and the court granted the motion and the government agreed to do it. And so there wasn't anything for us to object to, except for perhaps the timeline and how slow it's taken, much time it's taken to do this. But getting back to the court's, the reason for the court's inquiry, the court had inherent authority to conduct an independent investigation into abuse of judicial process, to fraud upon the court and the integrity of the judicial system. And all of that- Where does it say that in the article? I mean, could a district court judge investigate the FBI or the IRS or any other law enforcement agency because of the suspicion of abuse of process? No, we're talking about what had happened in that court before that judge, what had happened in that court before that judge gave rise to questions about abuse of judicial process and whether the court had been the victim of fraud, because there was so much concern about whether the government in defending and dealing with this litigation had made misrepresentations or misled the court about what it had actually done. And when that occurs in front of the court, the court's not required to turn it away and turn a blind eye to it. Then the court has inherent authority to investigate what happened in that courtroom, in that litigation. But Ms. Brannon, Judge Robinson didn't predicate the investigation on inherent authority. As you point out, she did cite inherent authority when she appointed Mr. Coyne as the special master, but she was pretty specific in predicating the investigation of phase three itself on 41G and she did not mention inherent authority. So how can we justify phase three on inherent authority, even if we agree with you that it could have? I think those two orders need to be looked at in tandem, because when she appointed the special master in the first place, the court contemplated a phase three. The possibility. The possibility of it and said, if these things happen, I may follow through with a phase three using this appointment of the special master. And so I don't think the phase three order can ultimately be read in isolation from the appointment of the special master when it was contemplated and conditions precedent had to be met before it proceeded with that. So it was clear that the appointment of the special master was based in part on the inherent authority and the special master's authority to proceed with the phase three investigation was predicated in part on the inherent authority. One of the things I'd like to point out, however, of all the evidence that's before the court in the black litigation. Only some of it was the product of what the court ordered from the U.S. attorneys. There was a lot of other evidence that came from many other sources, including defense counsel, including the FPD's own investigation and work with Securis, CoreCivic, and some of the most damning emails from the U.S. attorney's office did not come because the U.S. attorney was responding to the phase three investigation, but because a former U.S. attorney, Aaron Thomas, had turned them over to the special master. So it's very hard that if the court were going to go in and say, this part of it cannot be used, we'd have to go through a parse. What was the source of that particular information? And particularly, what was the source of the particular information that the government actively had this conduct? In looking back at the mandamus we're talking about here, there actually were three, there were two dissents, and I guess one of the majority in regards to that. But clearly it says, we direct the district court to limit the scope of investigation and inquiries to matters related to defendants before the court in United States versus Black, in that number, and the other parties in Black who have filed rule 41G motions in their proceedings. Now your argument though goes to what Judge Matheson said you could do, which was a dissent. To the extent the order leave disturbs the district court's order that the investigation should be conducted as it pertains to defendants in Black and to other parties that have filed rule 41G motion in Black, he agreed. But he would also permit investigation and inquiry related to defendants in other district court Kansas cases who have been pending motions before this court. So what you've described or what I'm hearing, and maybe I'm not hearing very well, but what you've described is the district court being able to expand and according to what Judge Matheson said. But that's not what the order that was approved was. It was limited in every respect to Black and Carter and to those who had filed the 41G in that case. But the universe of defendants who had filed a 41G in that case through our motion as a federal public defender was fairly broad because we were asking for either the people that we were. That's not correct, counsel. There were a specific number. I can't remember, but it wasn't that many. Not near what's in the cases now that have been filed under the 2255. Those were not parties to this Black and Carter matter. When we filed the 41G, it was predicated in part on the government's announcement that it may indict 95 more people who are at CCA. Our concern was that we represented a lot of those people and that's why we filed the 41G. And I think the court and the parties understood that that was the scope of the mandamus. And that's why the government has not come forward and said that the court exceeded the scope of the mandamus. A couple of things happened as a result of, for example... Why don't you go ahead and wrap up in about 60 seconds. The government has not met its Article III standing or prudential rightness standing. Everything we've been discussing here is speculative and conjectural in terms of how it will be used in the 2255. Yesterday, the two rulings were consistent with everything that the judge has done in the Black ruling and throughout the 2255, but it should make clear exactly what the court's intent was and how it uses Black and how it's going to conduct itself going forward, which has no preclusive effect whatsoever to these findings that the government is challenging here. For that reason, we ask the court to dismiss. Thank you. Any additional questions of Ms. Brim? What I'm going to do now... I'm going to give Mr. Glasser... I'm going to change course a little bit here. I'm going to give you five minutes to rebut what we've been discussing, and then we're going to take a five-minute break, and then we'll pick up with Mr. Woolford. So, five minutes for rebuttal. Thank you, Your Honor. The first thing I'd like to briefly address is just the factual issue of when the recordings were turned over and what recordings those were. So, in August of 2016, the U.S. Attorney's Office handed over the entire universe of recordings that had been seized as part of the Black investigation. I don't think there's any dispute there. The question, then, is the subsequent... turning over subsequent calls after the federal public defender filed and various other defendants filed motions for return of property under Rule 41G. Those were based on possible seizures of attorney-client calls intermixed with many other prison calls that the U.S. Attorney's Office had obtained over the past, I believe, approximately 10 years from CCA Leavenworth. And so, we're talking here about tens of thousands of calls that the U.S. Attorney's Office did not initially know whether or not attorney-client calls were intermixed. And so, the U.S. Attorney's Office then undertook to review its files and turn over any of the calls it had obtained from CCA without looking at them to determine whether or not there were attorney-client calls. So, it's true that production has been ongoing, but that production is only related to these other cases where the U.S. Attorney's Office wasn't initially aware whether or not it had even obtained attorney-client calls but has attempted now to turn them over. With respect to the legal issue, specifically Article III standing, I'd just like to point the court to page 1425 of the Jarvis case. This court's opinion in Jarvis v. Nobel, Cisco Food Services Company. And the court said this, in this case, a successful appeal by Nobel would eliminate any possible refiling of the retaliatory discharge claim in state court. As avoiding a state court suit would substantially reduce Nobel's future litigation costs, we find that Nobel has the requisite stake in this appeal. I think here, very similarly, there is a high litigation cost that the government faces in the Section 2255 proceedings, particularly with respect to the findings that relate to its conduct in the Black investigation, the Phase III investigation. And that is why the government believes that this court has jurisdiction under Jarvis and Supreme Court case law. Finally, I would just like to briefly loop back to the problem that we have here is that the district court engaged in an investigation that went far beyond trying to remedy Sixth Amendment rights of individual defendants and individual cases and engaged in an investigation into the culture of the U.S. Attorney's Office. At the hearing in October 2018, the federal public defender and the special master called many personnel from the U.S. Attorney's Office, including those who had nothing to do with the Black case, the Black investigation, and sought to investigate the internal workings of the office. That was inappropriate. Can I ask you, and I'll just tell you, I have serious questions, concerns along the lines that you just mentioned with regard to your separation of powers argument. But on the other hand, harkening back to the Chief's questions, I don't know what remedy is available at this juncture. Isn't it new? Your Honor, again, the investigation happened. Maybe it was improper with regard to a culture within the U.S. Attorney's Office. But what do we do with that? Your Honor, I don't think it's new because this court can grant a remedy that is to vacate the order saying that this was inappropriate from the start that will help the government engage in the future litigation or ongoing litigation as the case may be without these adverse findings hanging over its head. So it's limited, admittedly, but under the case law, that is sufficient for this court to have a case or controversy. And so that is the remedy that this court is authorized to enter. And I think, just to be clear, certainly the landscape is changing in the 2255 cases. Even after 17 months, the district court there hasn't sought to resolve any of these cases. It seems like we're getting closer. Certainly, there's a lot left to resolve there. But under the cases that we cite, the question is not whether the landscape is changing in those cases. It's rather whether the landscape is fixed in this case. And it is. The findings in this case are incorporated in a final order. The findings in this case have adverse consequences against the government and they stem from an improper investigation. And that's why we're asking for this court to vacate the district court's order. Do you agree with Ms. Brannon that the scope of the mandamus ruling is not before the court, that you have not appealed on ground that what Judge Robinson did exceeded the scope of the mandate in the mandamus ruling? Your Honor, yes, that is correct. We didn't, if I may finish, although my time has expired. We did not raise that as a separate argument. And the reason being that we believe that the scope of the mandamus order was a little bit unclear and it was difficult for us to say the district court exceeded that scope. But we think it relates closely to our broader point that it exceeded the proper scope under the Rule 41G in the separation of powers. All right, counsel, thank you. Okay, we're going to take a brief recess. It is 1015 Mountain. We'll reconvene at 1120 Mountain five minutes from now. And then we'll proceed with the objector's presentation. What time, Chief? 1120. Order's in recess for five minutes. All right, counsel,   we'll reconvene at 1120. All right, counsel.  S3     Q    Q E E H A  Q Q N Q R R AL E Reform 1 1 7 zero 0 1 2 0 0 1 2 0 21 1 ½ 1 4 5 4 5                 0 1 1 0      5 6 75 sixty 77 LOL 77 72 72 62 16 18 19 20 24 24 25 45 46 46 47 47 44 46 44 45 45 sticking sticking sticking sticking sticking sticking sticking sticking sticking sticking sticking sticking sticking sticking sticking sticking sticking sticking on the on  on on on on on on one on on   on the Honorable Judges of the United States Court of Appeals for the 10th Circuit. All right. Let's turn to the objectors' presentation. Mr. Wolford, you may proceed. Thank you, Your Honor. I'm going to place the court. The first thing we'd like to do is echo the government's concerns about the unbridled use of inherent powers in this case. As the government has explained, these powers are, they must yield to the separation of powers. But there's another interest. And these powers must also yield to human litigants' fundamental right to due process. I also want to set the stage a little bit to be clear our clients are not challenging the court's findings based on the adequacy of the evidence of this record. They're challenging the findings because the record itself was the product of an unconstitutional process. The assigned error is structural, so we believe the de novo standard is the appropriate standard here. However... If you argue that in your, in your, either one of your briefs, that the de novo, we pointed out that it was, I'm sorry, you argue that the standard is unclear. Have you argued that we should forego any forfeiture based on the existence of a structural error? Or is that a new argument? I don't think it's a new argument. I think we've always argued that this is a legal issue. And I'll be candid. I wasn't, I'm confused about what it is. We believe that even if it's clear error, or plain error, if you look at the record, I think the error with our clients is plain error. May I continue? Sure. These prosecutors entered these proceedings with instructions to give limited testimony as government witnesses. Counsel, let me, I wanted to see where you were going to go. And I have this question to start with. Are your clients still all employed as AUSAs? They are. And has anyone filed a grievance in the state of Kansas against any of your clients? Disciplinary? Yes. There are community matters. Yes, sir. There have been? There are, right now, community matters. It's in the confidential stage, but yes, there are. So, there has been filing.       I don't. I don't. I don't. I don't. I don't. I don't. I don't. I don't. And have you made the complaints against which of your four clients, or all four of them? I'm not privy to that. I'm not sure whether it was the judge or public defender, or it was just disseminated widely, and that's where it was found. And against all four, is that correct? Yes, sir. Okay. Go ahead. Okay. Well, the true nature of these proceedings were unknown to these lawyers until the court issued its contempt order, the 188 page one, and that included serious findings of misconduct, many aimed at my client. Now, some of the findings were just mere recitations of testimony, we'll grant that, but others... So, before you move on, I think that's important. For example, the recitation of Mr. Warner's testimony, the former criminal chief, so you are dropping those allegations where Judge Robinson was characterizing testimony from Mr. Warner or others? Yes. That's just recitations of his testimony, sir. All right. Well, let me ask you, for example, in footnote 355 about Mr. Zabel, where there are a few other examples, for example, with Ms. Flanagan, where Judge Robinson said, I find Mr. Zabel's testimony not believable. Now, how can a judge who is adjudicating facts, how can a judge have to give notice to somebody before they can find them not believable? Are you seriously prosecuting a claim that there was a finding that Mr. Zabel was unprofessional, violated his professional responsibilities, simply, for example, in footnote 355, which you quote, as simply where she finds him not believable? How can that be? I think the key here, I think, is to view this in context. If you look at each finding, each mention of our clients in isolation, you don't see the full context. What happened is the court said there's a pattern of prosecutorial discontent. The government's wholesale strategy, it got into the culture, and then the court proceeded to say how numerous individual human people, prosecutors, were stitches in that path. An analogy, let's say that a court finds group A guilty of a conspiracy to commit a crime, and then proceeds to list a number of people in group A and describes what they did to advance that conspiracy. What the court is saying is that those people are part of that conspiracy. All right. Well, let's say, hypothetically, person A wants to file a grievance, a disciplinary complaint with regard to any of these individuals. Now, other than stitching together this fabric, what in this 188 pages, what page, what paragraph could this hypothetical person say, here is a finding that Mr. Zabel, Ms. Flanagan, any of the other AUSAs who are prosecuting this appeal committed misconduct? And again, if you look at Zabel's credibility finding. Yes. The context of that is that the court found Mr. Zabel's testimony not credible involving his knowledge and involvement of accessing Paul's and the Herrera's and Mori's matters. And that was an unrelated case, by the way. That, if you look at isolation, that may seem innocuous, but, you know, the court says you lied about committing a crime. Whoa, wait. Where does that say that in Fitnot 355? She doesn't even say that Mr. Zabel is the one who had been privy to the surreptitious recordings. I thought your argument in your reply brief was simply that Judge Robinson was insinuating that she had known, that Mr. Zabel had known that Ms. Tomasek had surreptitiously recorded the calls. I didn't even know until just now that you had read that footnote so sweepingly to suggest that she was insinuating that he was the one who surreptitiously recorded something or that he was party to it. No, no. I'm sorry. It was an analogy. All that was was that Mr. Zabel had knowledge. Mr. Zabel can test that. And by the way, the evidence that was used for that was unsworn statements that she said was testimony that Mr. Zabel didn't even have. But I guess my point is, if a judge says you lied about something, a prescribed act of some sort, the judge isn't saying only that you lied in this court. The judge is saying that the prescribed act that you lied about, you did it. I just think that we need to extend the context a little bit. I know it's a narrative order, but the context we believe is key. Can any attorney... Oh, go ahead, Jake. Sorry. You know, your due process claim, a lack of adequate notice, and what we have are kind of fact witnesses coming in to a proceeding, and, you know, is there something that if they thought they might be written about in this opinion, is there something that they would have done differently, or is there some evidence that they would have brought with them? I mean, specifically, how were they affected at all by the proceeding? They would be like any other witness coming into court in an evidentiary hearing. Correct. That's true. And that's all they thought they were. They didn't realize they were witnesses to Jeopardy. And one thing that really made it, you know, so that they would only think that they're witnesses is they were actually sequestered. That's what you do to fact witnesses, but not someone that has an interest in the matter. What they would have done differently, they would have had a chance to see all the evidence that was mustered against them. They would have had a chance to formulate arguments. They would have had a chance, perhaps, to subpoena that forensic analysis that was done after the fact. That would have been nice to have. They would have done that. I don't know what all they would have done, but the narrative order would be a different narrative. Let's take your example, if they had subpoenaed the DOJ report, what did Judge Robinson say that that would have been even relevant to? Well, there were specific findings that my clients actually did either know about or actually reviewed or received recordings. And then two of the clients, two of our clients, actually used those recordings to get an unfair advantage in litigation. I would submit that they would vigorously fight those allegations. And although, I will say, I was accused of misrepresenting that study. And I will admit that an absence of proof isn't always conclusive proof of an absence. But it is probative. It's definitely probative. And they would have subpoenaed that. And it would have been, the court could have looked at it and looked at the probative value. But they didn't have a chance to do those. What do we do about the fact that your clients were not parties to the underlying litigation? It's pretty unusual that you have non-parties trying to appeal an order in a different case. That's true. I think that there are, their interest is discernible on this record. Although they didn't know they had an interest, they have certainly a particularized interest in this case. They have due process rights that the government doesn't have. And that's, and then in addition to, you know, if we look at Butler, Butler, I think, helps us in this area. Is that your best case? I think it's, I will say that the T for Gonzalez-Butler trilogy, those cases aren't the same because in those cases you had an attorney that was in a representative capacity. In our cases, in our case, our clients are in the mix. They didn't know that they were, you know, that they were targets. They didn't even know they were targets in the investigation, the Special Master's investigation. They were in the mix. But I still believe that just as a matter of viewability, those would apply here. Are these, are these findings sufficient, sufficiently injurious to make these appealable? I would agree with that. And I do think Butler is a good case for us. And I know that the FPD has said, well, it's not the same. And I think the only thing that's different between our case and Butler is that in Butler, they did address, the court went as far as to say there's misconduct and attach it to a rule. It circulated it. It circulated it. That's true. In our case, the court stopped short of signing Rule 8.4, which is the misconduct rule. But that's, I think that's the only step. But to your point, sir. Counsel, let me ask you this question. If the government is successful in getting the 188 page order struck or dismissed, you're through. You have no other dog in this hunt or in this fight. I would agree. The opposite is not true. The government could still lose and you could still win. Is that right? That's correct. And I think that goes to our standing issue here is, you know, the government, our interests are separate and apart, somewhat aligned, but there are, there's definitely a distinct difference. Under what circumstances, you know, for example, if I am called as a witness, say a character witness and in Oklahoma County and the judge says, Attorney Bob Bacharach lied on the stand, can I appeal that? And if I can't, what makes me different than your four clients? If you're just a fact witness, I think that's different because we were targets. All of these findings were against the government, but the government is just comprised of people and our people. And so to say that, I want to address your question squarely, to be honest. I don't know what the answer to that is. I would try to, certainly, but in our case, the cases, the allegations of misconduct arose out of cases that had nothing to do with Black, with a Black investigation. The court was essentially sitting, assuming the role of a disciplined plenary court and passing on cases and allegations of misconduct that she was not, she didn't see. And it's very analogous to a direct or indirect contempt. With the indirect contempt, you need full rights, due process rights. With a direct contempt where the judge actually sees it happen, you can use summary proceedings. I think it's analogous to that. As far as witnesses, I know that witnesses, some witnesses have standing to appeal, costs assessed to them. I tried to look for those witness cases, I couldn't see them. I couldn't find anything that would be directly square with this. All right, counsel, I think your time has expired and you'll get an opportunity for some rebuttal. Let's turn it over to Ms. Brannon again. Thank you, Your Honor, and may it please the court and counsel. The individual prosecutors appealed here failed on every level. They lack jurisdiction, their briefing is fatally inadequate. They lack, their single due process claim lacks legal authority, and they lack factual credibility in their claim. To start with, because they were not on a party below, they have to explain why they should be able to appeal here. They have the burden, just as the government did in the other case, approving Article III standing, and they have failed to do so. The one case that they rely on to do this is Butler. And the Tenth Circuit has recognized a class of non-parties who can appeal, such as sanctioned attorneys, but that is not what we have here. We don't have sanctioned attorneys. We have fact witnesses that testified, and the court, sitting as the finder of fact, assessed the credibility and weight of that evidence and found that they were not credible. What do you do with the fact that it appears they're facing disciplinary review based on the testimony and findings of the court here? First, in Tieford, that was not sufficient to confer Article III standing. And second, in the administrative or in the ethics inquiry, they will receive due process. And if they don't receive due process there, they can appeal it there because they are parties. But that does not make, that does not confer upon these witnesses a right to due process in this litigation. One of the things that is critical to their ability to proceed is that they must show why they did not intervene below. They didn't move to quash the subpoenas. Once they testified, they were not recalled to testify to address anything in particular. And when this opinion came down on August 13th of 2019, that had all the findings that they complain of, it was another five months before that order was final. They did nothing to move to intervene, nothing to notify the district court that they believed that they had not received due process or that they were entitled to due process. Butler is different because the court actually made findings that the attorney who was serving as attorney below violated ethical rules, named those ethical rules, which that did not happen here. So that was akin to a judgment. Here, the court just found that they were not credible or had done things that were inconsistent with their testimony. But again, as the court pointed out in Butler, the Butler court took an actual, took action against that attorney by mailing out the findings to every court where that attorney had been admitted. The court took no action against these four AUSAs for their testimony or the lack of credibility. Let's point out to you, their argument is that they, you know, their argument is they were stand back in a sense, because they were unsure about the scope of the proceeding and where it was going and they knew it was about the recordings. But, you know, of the class of AUSAs that were testified, you know, I would think that, you know, if I'd been one of them, and I knew the court was going to make a fact finding whether I had done something, i.e. listened to a recording or not, or facilitated somebody else, I might have, you know, put together some evidence that, you know, would show that, you know, I never accessed a recording or there wasn't privileged information on the materials that I had access to. And so they weren't given that opportunity. And that, you know, and now there's a fact finding that apparently there's nothing they can do about it in this federal court order. Well, that goes to our argument that this is not a factually credible argument. Because number one, the U.S. Attorney's Office had every opportunity to put that sort of evidence together and present it to the court. That was, in fact, their defense. They had notice of our evidence and they did not do that. Secondly, I'd like to point out that the forensic analysis that their attorney said that they would have subpoenaed did not exist at the time. I mean, this was an analysis that had taken place in the 2255 litigation. It didn't exist, so it wasn't available to them. The other point is that factually, because they were a USA, they got a level of notice that most fact witnesses don't. And we pointed this out in our brief because they all got TUI notices. We listed with specificity all of those topics that would be asked, the cases that we would be addressing, and included that we would be asking questions about credibility. In regards to one in particular, I'd like to point out Ms. Flanagan. In the phase three order, the district court set forth exactly what the controversy was, exactly what her concerns about credibility were, and literally listed the questions that Ms. Flanagan would have to answer. There can't be much more notice than that. And so, as a matter of reality and practice, they got notice. But more than that, what they haven't said is, if there are fact witnesses that are entitled to notice, what sort of notice is this supposed to, what form is it supposed to take? Counsel, you mentioned Ms. Flanagan and that the district court itemized exactly the questions that were going to be asked. Did she do the same thing for the other three? Not in the phase three order because I don't think it was set out. I mean, if she did it for one, why wouldn't she do it for all of them? Because there was a very specific controversy that was before the court in phase three order about whether Flanagan had threatened to review video recordings in order to remove a defense attorney. Well, if this argument goes to notice and she only did it for one, then that means we're going to have to review the whole record to see if she did it for the other three or she might have notice? No, because we pointed out other areas. Number one, the special master also had to go through the TUI requirements and give notice to them about what the contours of their testimony would be. But again, we're getting past the issue of whether they were entitled to any notice. The second part of this is opportunity to respond because all of them, in fact, did testify. And in fact, Flanagan testified when she was called by her own office to explain the issues that Judge Robinson had asked about. So there was a full opportunity to respond. Getting back to the idea of the insufficient briefing here because what we're dealing with really is a plain error review. I would ask the court to look at the Loeffler case where it refused to review a particular claim of a criminal defendant because of insufficient briefing on plain error. If the court's going to do that to a criminal defendant, then it certainly should do that and hold the government to the same standard and hold these individual prosecutors to the same standard because they made a specific strategic decision not to brief plain error standard of review on this open brief. And under this court's jurisprudence, that is fatal to review. If this court is going to undertake a review under a plain error, however, the first question is just whether it is error. Trying to fit these fact witnesses into the body of law that applies to sanctioned attorneys is evidence that this is not plain error. There's no reason that Judge Robinson would have had to look at the sanctioned attorney law and say, I need to do something specific to give notice to these attorneys about what they will be asked about. And perhaps that's because she knew that they had TUI notice and had the exact contours of what they would be testifying to. There is the government, or I'm sorry, the AUSAs have not pointed to one point of law that made it plain that the district court had to do anything specific for these four witnesses to give them notice about the contours of their testimony or an opportunity to respond. And indeed, there's nothing in the record that says they were not able to respond to anything in particular. As far as their briefing on jurisdiction, I think the best case to look at on this is the Raley case out of the 10th Circuit, where it talked about a non-party below intervening into an appeal. And there the court walks through Article III jurisdiction and showing that there was an injury in fact and that there would be redressability. On the point of redressability, if this court were to vacate this particular order in regard to these four AUSAs, that would not change what these four AUSAs did. It wouldn't change the other evidence that contradicted what they said. It wouldn't change the testimony. It would in no way remedy the harm that they're complaining of because all of that evidence is still available for us to take into the 2255s, which we intend to do and would do if they were witnesses there to talk about their credibility. The idea that this court is going to issue a precedent that says a fact witness is entitled to due process so that they can garner their own evidence, that they can cross-examine other witnesses, that they can do anything of the sort that they have suggested here would really be hard to envision. The special master in the adversary proceeding was both a witness and an attorney. That's right. Expert witnesses, police officers, their credibility matters beyond the testimony there. The idea that they would deserve due process in those situations has no support whatsoever in the law. The cases that are cited here do not support the Article III standing. Again, they haven't said what form this was supposed to take. At the very most, the cases suggest that the appropriate remedy is a remand in order to give them notice and the opportunity to respond, not the remedy that the government or the USA has asked here, which is just to eradicate the opinion. Unless the court has any further questions. Thank you. Thank you, Ms. Brannon. Keith put three minutes up for a vote. Thank you. Thank you, Your Honor. First, the post-deprivation process, that's curtailed for these lawyers. There's a rule that says that in a disciplinary proceeding, the finding from civil judgment can be accepted as prima facie proof of that finding. So they'd be starting, once again, with a presumption of guilt. I think that that also provides a basis for standing in this case, adverse collateral. Refresh my memory as to why we waited, what, three months? What, if your clients are so concerned, why did three months, I believe it was three months, why did five months, why did five months lapse and nothing said or done? They tried to, and I wasn't involved, Your Honor, until... An answer. Do you have an answer at all for that question? All I know is they attempted to appeal that initial order and the court rejected the appeal because it wasn't a final order. That's about all I can say on that matter. The notice, I think that's important. There's a different type of notice you have to give to a faculty. Saying this is what you're going to be testifying to really doesn't give that fact, that witness notice that they're in jeopardy. Especially if you don't think you did anything wrong in that case. They don't think they did anything wrong and they would vigorously contest these findings. Even if there is an adverse inference or a presumption against them, they think they can overcome that presumption if given the opportunity finally. But still the fact that there is, there may be a presumption against them in the disciplinary proceedings presents some new challenges. The ability to respond and to confront evidence. The record, I think this may be the most egregious thing that was done, is the record was closed. At the special master's behest, the court entered an order, a gag order essentially, saying you can't sit in on the proceedings, you can't see the evidence, you can't talk, you can't see what other people are going to talk about. These attorneys, witnesses who were in jeopardy at the time, they didn't know it, had a right to a trial on the record that was disclosed to them. And there's also some bias that I think is demonstrated. All right, counsel. Thank you very much. Your time expired. And I appreciate your arguments this morning. They were lengthy, but it's an important case, obviously. And we appreciate the presentations that were made.